UNITED STATES DISTRICT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
KERRIN R. SMITH,              )
        Plaintiff,            )
                              )
v.                            )    Civil Action No. 13-10796-PBS
                              )
CAROLYN W. COLVIN,            )
     Acting Commissioner,     )
     Social Security          )
     Administration,          )
        Defendant.            )
_____)
```

**MEMORANDUM AND ORDER**

September 22, 2014

SARIS, U.S.D.J.

**I. INTRODUCTION**

Plaintiff Kerrin R. Smith filed this action pursuant to 42
U.S.C. §§ 405(g), 1383(c)(3) for judicial review of the decision of
the Administration Law Judge ("ALJ") for the Social Security
Administration ("SSA") denying his application for Supplemental
Security Income ("SSI") benefits. He moves to reverse the
Commissioner's decision, arguing that (1) the ALJ failed to give
proper weight to the treating physician's account of his
disabilities, and (2) the ALJ's vocational conclusions were not
supported by substantial evidence. Defendant, meanwhile, moves to
affirm the Commissioner's Decision.

For the reasons set forth below, the Court **DENIES** Plaintiff's
Motion to Reverse and Remand the Decision of the SSA (Docket No.

18), and **ALLOWS** Defendant's Motion to Affirm the Commissioner's decision (Docket No. 23).

## II. FACTS

At the time of the hearing before the ALJ on March 15, 2012, plaintiff was 40 years old and had a 17 year-old daughter. R. 19, 41. Plaintiff graduated from high school and completed two years of college credits. R. 162. Plaintiff lives with his mother and stepfather and contributes to the household by giving his mother his Department of Transitional Assistance benefits. R. 42. His intermittent work history, spanning the period from 1993 to 2006, included employment as a driver, a telemarketer, and some light painting jobs. R. 187-192.

### A. Medical History

In 1990, plaintiff was shot four times and sustained gunshot wounds to his back, left arm, and right leg. R. 39. He alleges several debilitating physical conditions, including degenerative disc disease, bilateral hip disorder, and right leg disorder, which arose from the gunshot wounds and subsequent surgeries. R. 161-62.[1] He also alleges that these conditions have deteriorated to such an extent that they prevent him from performing any substantial gainful activity so that he is no longer able to work. R. 39-40.

---

[1] Plaintiff also has various mental ailments, including anxiety and depression, that are not at issue.

2

### 1. Degenerative Disc Disease

In 1990, plaintiff had a laminectomy and fusion performed on his spine immediately after he suffered gunshot wounds to his back. R. 227. He has suffered from chronic back pain ever since the shooting. R. 395. From 1990 to 2008, plaintiff's residual pain continued to increase, and he developed hip and right leg pain as his back pain worsened. R. 17.

In January 2008, plaintiff made two emergency room visits with complaints of back pain. R. 299-305. In April 2008, he was evaluated by Tony Tannoury, M.D., an orthopedist. R. 417. Plaintiff reported back and right leg pain which worsened upon sitting and standing. Id. Dr. Tannoury found diffuse lower back tenderness and noted that plaintiff was able to bend and touch his knees and perform bilateral straight leg raises. R. 418-19. Dr. Tannoury diagnosed him with degenerative disc disease, prescribed physical therapy, and referred him for a CT Scan to assess for any neurological compression. R. 419.

In May 2008, a CT scan performed at Boston Medical Center revealed lumbar postoperative changes at L4-L5 with shrapnel in the spinal canal, bilateral L5 spondylolysis and degenerative changes at L5-S1. R. 498-99. By July 2008, plaintiff reported worsening back symptoms, despite his physical therapy. R. 434.

In January 2009, Dr. Tannoury identified plaintiff as a candidate for back surgery; and in March 2009, he performed L5-S1 transforaminal lumbar inter-body fusion on plaintiff. R. 243-45, 259. In a follow-up exam the next month, plaintiff reported that his deep-seated pain had resolved and denied any numbness or tingling in his legs. R. 428. A subsequent X-ray of the lumbar spine on April 15, 2009, showed improvement in the area following surgery. R. 238. During another visit in July 2009, plaintiff again reported improvement with respect to his lower back pain, although he complained of a new symptom of hip pain, discussed _infra_. R. 427.

On February 26, 2010, plaintiff saw Eduard Vaynberg, M.D., of the New England Pain Management Consultants at Boston Medical Center for an initial evaluation. R. 531-34. Plaintiff reported to Dr. Vaynberg that his lower back pain radiated into his buttocks, and that the pain was constant, worse in the morning, and exacerbated by walking long distances or prolonged sitting. R. 441. Dr. Vaynberg's examination revealed that plaintiff was somewhat tender to and somewhat limited in lumbar extension, although his strength was 5/5 in all lower extremity major muscle groups. R. 442. Dr. Vaynberg also reviewed plaintiff's prior X-rays and noted that the images showed an intact fusion in his back from prior surgery. R. 533. His treatment plan for plaintiff's lower back was to start with a caudal epidural steroid injection "to provide him with some

relief." R. 442. Plaintiff received these steroid injections in his back in February and March of 2010. R. 287-90.

Meanwhile, from January 2010 to March 2010, plaintiff underwent physical therapy to increase mobility and decrease pain in his back. R. 261-285. In March 2010, Amanda Shirah, plaintiff's physical therapist, opined that plaintiff's major functionality had been restored, but that his back pain increased with extended walking and sitting, lifting more than 15 pounds, bending, and climbing more than three flights of stairs. R. 263-65.

Plaintiff again received epidural steroid injections in his spine in May and June 2010 at Boston Medical Center. R. 468, 473. In May 26, 2010, a CT scan of his lumbar spine revealed interval posterior instrumented fusion at L5-S1 with partial bony fusion, mild posterior disc bulge, mild bilateral foraminal narrowing at L4-L5, and mild degenerative changes of the sacroiliac joints. R. 476.

In September 2010, plaintiff saw Dr. Davidson for a follow-up. R. 462-64. Plaintiff reported that the injections helped his pain, but that he was experiencing numbness down the lateral aspect of his right leg from his right knee to his toes. R. 462. His physical exam showed normal mobility, no deformities, and negative straight leg raising. R. 464.

In March 2011, plaintiff received another epidural steroid injection in his lumbar spine from Dr. Vaynberg, who diagnosed plaintiff with "failed back surgery syndrome." R. 531.

**2. Bilateral Hip Disorder**

In July 2009, plaintiff reported improvement regarding his back symptoms but complained of left hip pain. R. 235. A hip X-ray was negative and plaintiff showed full range of motion in his hip. R. 235, 395. In November 2009, Jeffrey Zarin, M.D., an orthopedic surgeon, evaluated plaintiff and reported somewhat flexed gait and tenderness not associated with his previous spinal surgery. R. 266.

In March 2010, Dr. Zarin saw plaintiff for an orthopedic consult regarding his anterior hip pain. R. 457. He was under no apparent distress, and although he had a slightly flexed hip gait and some pain with stretching, Dr. Zarin determined that hip surgery was not necessary. Id.

A year later in March 2011, plaintiff was evaluated by Richard Wilk, M.D., an orthopedic surgeon at the Lahey Clinic, who noted a positive impingement sign in the hips bilaterally with intact motor and sensory exam, and determined plaintiff was a candidate for left hip surgery. R. 513-15. On May 4, 2011, plaintiff underwent left hip arthroscopic surgery with femoroplasty, labral debridement, with chondroplasty of the acetabulum and femoral head. R. 516-18. In a follow-up exam later that month, Dr. Wilk noted that plaintiff had no pain with log rolling or weight-bearing. R. 514. Dr. Wilk noted a normal neurovascular exam in the left leg with no numbness. Id.

Meeting with Dr. Wilk again on June 10, 2011, plaintiff stated that his left hip was doing well overall following the surgery, but

that his pain level was a 9 out of 10. R. 513. Based on the minimal symptoms in his right hip, Dr. Wilk recommended holding off on a right hip arthroscopic surgery. Id.

### 3. Right Leg Disorder

As a result of plaintiff's 1990 gunshot wounds, a bullet remains in his right leg. R. 39. In April 2008, plaintiff visited Dr. Tannoury and reported right leg pain in addition to his back pain and reported that the pain worsened upon sitting or standing. R. 417.

At another visit with Dr. Tannoury in March 2009, plaintiff complained that his back pain radiated to his right leg down to the knee. R. 256. He also reported weakness in his right leg with numbness and tingling upon ambulation. R. 434. Dr. Tannoury noted that he walked with an antalgic gait. Id.

Additionally, during his initial visit with Dr. Vaynberg on February 26, 2010, plaintiff reported numbness in his right leg and pain that was "exacerbated by walking long distances and climbing stairs and sitting for long periods of time." R. 533.

## B. State Agency Medical Consultant's Evaluation

On June 10, 2010, John Jao, M.D., completed a physical residual functional capacity ("RFC") assessment on behalf of the SSA. R. 394–401. Dr. Jao did not examine plaintiff but based his determination on a review of plaintiff's medical records. R. 19.

Dr. Jao noted that plaintiff's hip X-ray was negative and entirely normal, and that he showed full range of motion upon exam. R. 396. He pointed out in the RFC evaluation that plaintiff's activities of daily living included cooking, walking, taking public transportation, shopping, watching TV, and listening to music. Id. Additionally, Dr. Jao wrote that plaintiff's standing ability was limited to two hours in an eight-hour workday. Id.

Dr. Jao opined that plaintiff was able to lift 20 pounds occasionally and up to 10 pounds frequently,[2] that he could sit for six hours of an eight-hour workday, and that his ability to push and pull was not limited. R. 395. He also found that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 396. Dr. Jao determined that plaintiff had no manipulative or other limitations. R. 397-401.

## C. Treating Physicians' Evaluations

Plaintiff obtained medical evaluation opinion evidence from Dr. Melzer and Dr. Davidson. The ALJ granted little weight to Dr. Melzer's medical assessment and granted some weight to Dr. Davidson's medical assessment. R. 19.

---

[2] The SSA defines "occasionally" as cumulatively "occurring from very little up to one-third of an 8-hour workday" and "frequently" as cumulatively "occurring one-third to two-thirds of an 8-hour workday." R. 394.

### 1. Dr. Melzer's Medical Opinion

Ellen Melzer, M.D., an internist, completed a Massachusetts Department of Transitional Assistance EAEDC (Emergency Assistance to Elderly, Disabled, and Children) Medical Report regarding plaintiff's condition in February 2010. R. 524-30. Dr. Melzer examined and met with plaintiff for the first time the day she completed the report. R. 526.

In the report, Dr. Melzer indicated that plaintiff suffered from back and hip pain, but she did not mention plaintiff's leg pain. R. 524-30. She opined that plaintiff could not drive or use a computer due to pain from sitting. R. 528. Additionally, Dr. Melzer noted that plaintiff's symptoms limit his ability to maintain his personal hygiene, complete ordinary housework, and go food-shopping. Id. She opined that plaintiff's impairments affect his ability to work and are expected to continue for more than one year. R. 529.

### 2. Dr. Davidson's Medical Opinion

On or about January 26, 2012, Peter Davidson, M.D., an internist, completed an EAEDC Medical Report. R. 537-38. Dr. Davidson noted that plaintiff's motor strength and sensation were normal, that his lumbar spine was tender, and that all other motor systems were within normal limits. R. 539. He also noted that the May 2010 CT scan of plaintiff's lumbar spine showed degenerative changes and hardware from prior surgery. Id. Dr. Davidson diagnosed

plaintiff with degenerative arthritis due to gunshot wounds and noted that the condition was chronic, that improvement was not expected, and that his treatment plan included epidural steroid injections. R. 539-540.

In March 2012, Dr. Davidson submitted an RFC assessment indicating that plaintiff's prognosis for his back and hip pain was "good." R. 544-47. He opined that plaintiff's symptoms "seldom" interfere with his attention and concentration, and that he was able to sit for two hours and stand for forty-five minutes at a time. R. 545. In the context of an eight-hour workday, Dr. Davidson wrote that plaintiff was able to sit for at least six hours and stand/walk for less than two hours in an average workday, requiring two to three unscheduled breaks lasting 10 minutes. R. 546. Dr. Davidson stated that the patient did not have significant limitations in doing repetitive reaching, handling or fingering, but then stated that he could only use his hands to grasp, turn and twist objects 80% of an 8 hour work day; use his fingers to do fine manipulations 80% of the time; and use his arms for reaching (including overhead) 80% of the time.

## C. Hearing Testimony

At plaintiff's hearing, he testified that his 1990 gunshot wounds caused injuries to his back, left arm, and right leg. R. 39. A bullet remains in his right leg. Id.

Plaintiff stated that he has trouble walking uphill and bending, can only sit for 15-20 minutes at one time, and has trouble sleeping. R. 42-44. He also said that he is able to lift about 10 pounds, that he helps with small household tasks, and that he can prepare basic meals. R. 42-43, 59. He averred that he takes Percocet about three times per day and that his medication helps him with his pain. R. 47, 58.

Plaintiff also testified that he watches television, reads, listens to music, and plays keyboard. R. 43. While at home, he becomes distracted on average two to three times per day. R. 57.

### III. STANDARD

**A. Statutory and Regulatory Framework**

A claimant seeking benefits under the Social Security Act must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is only disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3). To satisfy this definition, the claimant must have a severe impairment that renders him unable to do his past relevant work or any other substantial gainful work that exists in the national economy. 20 C.F.R. § 416.905(a).

The Commissioner of the Social Security Administration has developed a five-step sequential evaluation process to assess a disability benefits claim. 20 C.F.R. § 404.1520(a)(4); see also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). The ALJ may terminate the evaluation at any step in the process if it is determined that the claimant either is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The five steps are as follows: (1) if the claimant is engaged in substantial gainful work activity, the application is denied; (2) if the claimant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; (3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; (4) if the claimant's RFC is such that he is able to perform past relevant work, then the application is denied; (5) if the claimant, given his RFC, education, work experience, and age, is unable to do any other work, then the application is granted. Id.; Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

The claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). His "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [he] can do in a work setting." Id. A claimant can adjust to other work if he is able to perform any jobs

that "exist in significant numbers in the national economy." Id.; 20 C.F.R. § 404.1560(c)(1).

The claimant bears the burden of proof on steps one through four of the sequential evaluation process. Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). At step five, the SSA bears the burden of proof to present evidence of specific jobs in the national economy that the applicant is able to perform. Id.

## B. Standard of Review

The Court's authority to review an ALJ's disability determination is limited, Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), as it does not make de novo determinations of the ALJ's factual findings, Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). If the ALJ's findings are supported by substantial evidence, then the findings are conclusive. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). However, the ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.

Substantial evidence will be satisfied and the decision upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept [the ALJ's findings] as adequate to support his conclusion." Ortiz v. Sec'y of Health and Human Servs., 995 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health &

Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). It is the ALJ's responsibility to draw inferences from evidence in the record. Id. The Court must uphold the ALJ's determination "even if the record arguably could justify a different conclusion, so long as [the determination] is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The Court examines the record as a whole to determine the quantity and quality of the medical evidence. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306 (D. Mass. 1998).

In addition to considering whether the ALJ's determination was supported by substantial evidence, the Court reviews whether the proper legal standard was applied. The ALJ's failure to "apply the correct legal standards as promulgated by the regulations," and failure to "provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards" are both grounds for reversal of the ALJ's determination. Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

## IV. PROCEDURAL HISTORY

Plaintiff filed for SSDI and SSI benefits on February 9, 2010, alleging disability beginning on January 6, 1990.[3] R. 118, 125. His

_____

[3] Plaintiff does not contest the Commissioner's dismissal of his SSDI claims. Because plaintiff only challenges the ALJ's denial of SSI benefits, the relevant starting period for his alleged disability is February 9, 2010, his SSI application date, not his alleged onset date. See 20 C.F.R. § 416.202(g) (a claimant's

claims were initially denied on June 18, 2010, and denied upon reconsideration on January 6, 2011. R. 75, 81. On March 3, 2011, plaintiff filed a request for a hearing, which was held on March 15, 2012, before ALJ William Ramsey. R. 28, 87. Plaintiff and his attorney, Mr. Bruce Lipsey, appeared in person, and the vocational expert, Mr. Joseph Goodman, appeared via telephone. R. 28. Following the hearing, plaintiff submitted additional written evidence for consideration, which satisfied the requirements of 20 C.F.R. 405.331(c) and was admitted into the record prior to the ALJ's decision. R. 13.

On April 27, 2012, the ALJ issued a decision dismissing plaintiff's SSDI claim and denying his claim for SSI benefits. R. 10-25. Plaintiff contests only the ALJ's SSI determination.

The remainder of the ALJ's decision addressed plaintiff's claim for SSI benefits under the five-step sequential evaluation process. R. 14. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 29, 2010. R. 15. At step two, the ALJ found that plaintiff's impairments of degenerative disc disease, bilateral hip disorder, and right leg disorder caused significant limitations and classified these conditions as severe. Id. At step three, the ALJ found that plaintiff's impairments do not

eligibility for SSI benefits does not begin until the claimant has filed an application).

meet or equal the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

Prior to beginning step four, the ALJ made a determination of plaintiff's RFC. The ALJ found the following:

> [Plaintiff] has the [RFC] to perform sedentary work . . . except that [plaintiff] is able to lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk at least 2 hours in an 8-hour day, sit for 6 hours in an 8-hour day and requires the option to alternate between sitting and standing. Further, [plaintiff] is able to occasionally climb, balance, stoop, kneel, crouch, or crawl. Finally, [plaintiff] is limited to simple, routine and repetitive tasks.

Id. The ALJ concluded that plaintiff retained "the residual functional capacity to perform work activities consistent with the reduced range of sedentary work." R. 19.

At step four, the ALJ adopted the testimony of the vocational expert and found that plaintiff was unable to perform his past work. Id. This finding was based on the vocational expert's determination that the physical demands of plaintiff's past work exceeded his RFC. Id.

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, was well as the testimony of the vocational expert, and concluded that he was capable of adjusting to other work that exists in significant numbers in the national economy. R. 20. Therefore, the ALJ found that plaintiff has not been disabled under the Act since the date he filed his application for SSI benefits. R. 20, 155.

On February 6, 2013, the Appeals Council denied plaintiff's request for review as to both the SSDI and SSI claims. R. 1-4. Plaintiff's case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## V. DISCUSSION

Plaintiff contends that the ALJ committed two errors in determining that he is not disabled. First, he asserts that the ALJ failed to accord proper weight to the medical opinions of his treating physicians while evaluating his RFC. Second, plaintiff argues that the ALJ's faulty RFC determination caused him to rely on the wrong hypothetical question posed to the vocational expert regarding jobs in the economy that plaintiff is able to perform. The Court finds that the ALJ's RFC determination and subsequent vocational conclusions were supported by substantial evidence.

### A. Weight Assigned to Medical Opinion Evidence

A treating source is defined as a patient's own physician, psychologist, or other acceptable medical source who has provided medical treatment in an ongoing way. 20 C.F.R. §§ 404.1502, 416.902. A treatment provider's opinion is entitled to controlling weight on the issues of the nature and severity of the claimant's impairment if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(c)(2); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54

(D. Mass. 2002) (explaining that an ALJ may choose not to give a treating physician's opinion controlling weight if it is inconsistent with other substantial evidence in the record).

If the treating source's opinion is not given controlling weight, then the ALJ must determine the amount of weight to give the opinion based on factors including the length of the treatment relationship, the evidence supporting the opinion, whether the opinion is consistent with the record as a whole, and whether the source is a specialist. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ must give "good reasons" for the weight assigned to medical opinions. Id. "Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation." Crosby v. Heckler, 638 F. Supp. 383, 385-86 (D. Mass. 1985).

By comparison, "[a] report given by a nontreating physician is entitled to evidentiary weight but cannot be the sole factor of an ALJ's decision." Rosario v. Apfel, 85 F. Supp. 2d 62, 68 (D. Mass. 2000). The First Circuit has refused to adopt a per se rule regarding the proper weight afforded to the report of a non-examining physician. Tremblay v. Sec'y of Health & Human Servs., 678 F.2d 11, 13 (1st Cir. 1982). The opinion of the non-examining physician may be given greater weight depending on the circumstances, "including the nature of the illness and the

18

information provided" by the non-examining physician. <u>Rodriguez</u>, 647 F.2d at 223. Another factor affecting the weight of the non-examining physician's opinion is whether the opinion is based on a complete case record. <u>Berrios Lopez v. Sec'y of Health & Human Servs.</u>, 951 F.2d 427, 431 (1st Cir. 1991).

With these principles in mind, the ALJ committed no reversible error in his determinations of how much weight to give the various reports from plaintiff's treating physicians. First, the ALJ correctly declined to grant Dr. Melzer's opinion controlling weight. Dr. Melzer opined that plaintiff's back and hip pain affected his ability to work and was expected to last for more than a year. R. 529. But Dr. Melzer completed her report on the first day she treated plaintiff. R. 526. For this reason, her opinion does not meet the requirements for that of a "treating" physician because, at the time Dr. Melzer gave her opinion, she did not have "an ongoing treatment relationship with [plaintiff]." 20 C.F.R. §§ 404.1502, 416.902; <u>see also</u> <u>Castro</u>, 198 F. Supp. 2d at 54.

Additionally, Dr. Melzer's opinion conflicted with evidence in the medical record. For example, Dr. Melzer opined that plaintiff's conditions prevent him from using a computer. R. 528. However, by plaintiff's own testimony, he is able to play keyboard. R. 43. In terms of functional capacity requirements, these activities are nearly identical – both involve sitting, use of the hands and arms, and prolonged concentration. The ALJ discounted Dr. Melzer's opinion

in favor of plaintiff's admissions. Therefore, the ALJ's decision to grant Dr. Melzer's opinion little weight was supported by substantial evidence.

Substantial evidence also supports the ALJ's decision to assign only "some weight" to the opinion of Dr. Davidson, who had treated plaintiff approximately three to four times per year over the course of two years at the time of his report. R. 544. The ALJ agreed with Dr. Davidson's opinion that plaintiff's "ability to sit, walk and[/]or stand and lift and carry" was limited to a "less than sedentary level." R. 19. These limitations were supported by plaintiff's sustained pain management, his pain medication, and Dr. Wilk's finding of residual post-operative pain. Id. The ALJ also agreed with Dr. Davidson's opinion that plaintiff's limitations do not significantly limit his concentration as he is able to watch TV, read, and help his daughter with homework. Id.

The ALJ disagreed, however, with Dr. Davidson's opinions on two counts. First, the ALJ disagreed that plaintiff was limited in the use of his arms, hands, and fingers. Second, the ALJ disagreed that, as a result of his physical limitations, plaintiff required two to three unscheduled breaks during the workday and would miss, on average, two days of work per month. R. 546-47. The Court finds that substantial evidence supports the ALJ's disagreement with Dr. Davidson's opinions.

To begin with, Dr. Davidson did not provide any explanation or

evidence, whether from his own records or other medical records, to support these opinions. See Guyton v. Apfel, 20 F. Supp. 2d 156, 167 (D. Mass. 1998); 20 C.F.R. § 404.1527(c)(3) (explaining that more weight will be given to treating opinions that are accompanied by explanation and relevant evidence). Moreover, the ALJ found several pieces of objective medical evidence in conflict with Dr. Davidson's opinions. For example, Dr. Davidson checked the box indicating that plaintiff had no "significant limitations in doing repetitive reaching, handling, or fingering," R.547, and found that, overall, plaintiff's prognosis was "good," R. 544. Dr. Wilk's medical records also suggested that plaintiff was suffering minimal symptoms on his right hip, and minimal pain and significant improvement in his left hip. R. 513. Similarly, plaintiff told Dr. Davidson in July 2010 that he was getting relief from his treatment and felt that "things are improving" overall. R. 469. In May 2011, plaintiff also told Dr. Wilk that he was "doing well" overall after his left hip surgery. R. 513. Finally, the ALJ relied on plaintiff's testimony that he was able to go shopping, help his daughter with school work, and play keyboard on a daily basis. R.19. Given these inconsistencies between Dr. Davidson's unsubstantiated opinions and other medical evidence in the record, the ALJ's decision to grant Dr. Davidson's opinion only "some weight" is supported by substantial evidence.

Plaintiff also disagrees with the ALJ's decision to grant "great weight" to Dr. Jao's opinion. Like the ALJ, however, the

Court finds that Dr. Jao's opinion was "consistent with the substantial evidence of record and the longitudinal treatment record." R. 19. After examining plaintiff's medical records, Dr. Jao, a non-examining consultant, believed that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand for at least two hours and sit for about six hours in a workday. R. 395. In support of Dr. Jao's opinions, the ALJ cited plaintiff's negative left hip X-ray and the improvement of his hip and back pain following his operations. R. 19. The ALJ also found Dr. Jao's opinions consistent with plaintiff's ability to prepare simple meals, read during the day, and take public transportation. R. 19.

Plaintiff suggests that Dr. Jao's opinions are somehow less reliable than Dr. Davidson's opinions because he underwent left hip arthroscopic surgery in May 2011, less than a year after Dr. Jao issued his report. R. 516-18. But there is no evidence in the record indicating that plaintiff's surgery substantially affected his RFC. In fact, Dr. Wilk noted that plaintiff's left hip was doing well following the arthroscopy and that a right hip arthroscopy was not necessary as of June 2011. R. 513. Further, even Dr. Davidson's report made no mention of how plaintiff's RFC was affected by his May 2011 surgery. See R. 544-47. As a result, the ALJ was justified in assigning "great weight" to Dr. Jao's opinion, even though it was issued prior to plaintiff's left hip arthroscopic surgery.

Finally, plaintiff argues that he produced substantial evidence of his disability through his testimony, especially his statements regarding the ongoing stream of medication, physical therapy, and surgeries he has endured since suffering gunshot wounds to his back, arm, and leg in 1990. Given the weight of his testimony, plaintiff argues that the ALJ should have credited his statements "concerning the intensity, persistence, and limiting effects of the symptoms." R. 18. The Court disagrees.

When a claimant alleges pain to an extent not supported by objective medical evidence, "a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered." Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986). The Court defers to the ALJ's assessment of the credibility of the claimant's testimony, "especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

Based on the longitudinal treatment record and the available objective medical evidence, substantial evidence supports the ALJ determination that plaintiff's subjective allegations of the degree of pain were not credible. R. 18. The ALJ noted that plaintiff's daily activities include reading, listening to music, playing the keyboard, dusting, preparing simple meals and otherwise spending

time with his daughter and family. The ALJ also considered reports from plaintiff, such as his June 2011 report of mild symptoms in his right hip, improvement in his left hip following the arthroscopy, and improvement of his back pain from epidural steroid injections. Therefore, the ALJ's decision to discount plaintiff's subjective reports of pain was supported by substantial evidence.

For these reasons, the Court finds that substantial evidence supports the ALJ's decisions to: (1) give Dr. Melzer's opinions little weight; (2) give Dr. Davidson's opinions only some weight; (3) give Dr. Jao's opinions great weight; and (4) find plaintiff's complaints regarding the severity and extent of his pain not fully credible.

## B. Vocational Expert Testimony

To constitute substantial evidence, the vocational expert's opinion must be in response to a hypothetical that accurately describes the claimant's impairments. <u>Arocho</u>, 670 F.2d at 375. However, the ALJ is not obligated to include alleged impairments that have been deemed not credible. <u>Rossi v. Shalala</u>, No. 95-1045, 66 F.3d 306, 1995 WL 568492, at *4 (1st Cir. Sep. 25, 1995) (unpublished table decision). Generally, the ALJ may rely on a hypothetical that accurately reflects the record's objective medical findings. <u>See, e.g.</u>, <u>Perez v. Sec'y of Health & Human Servs.</u>, 958 F.2d 445, 447 (1st Cir. 1991).

Here, the ALJ presented the vocational expert with a

hypothetical person of plaintiff's age, education, and work history, who is able to lift ten pounds occasionally, less than ten pounds frequently, stand and walk at least two hours in an eight-hour work day, who can occasionally climb, balance, stoop kneel, crouch, or crawl, and whose work is limited to the performance of simple, routine, and repetitive tasks. R. 62. The vocational expert responded that this hypothetical individual could not perform plaintiff's past work, but that he could perform other jobs in the local and national economy such as final assembler, press operator, and polisher. R. 62-63.

As stated above, the ALJ's hypothetical accurately described plaintiff's RFC to perform work activities within the range of the reduced sedentary level and his decision not to include certain restrictions was based on substantial evidence in the record.[4] Thus, the SSA satisfied its burden at step five that plaintiff is able to perform suitable jobs that exist in significant numbers in the national economy. Arocho, 670 F.2d at 375.

## VI. ORDER

The Court **ALLOWS** Defendant's Motion to Affirm the Commissioner's Decision (Docket No. 23), and **DENIES** Plaintiff's

---

[4] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 416.967(a).

Motion to Reverse and Remand the Decision of the SSA (Docket No. 18).

                              /s/Patti B. Saris
                              PATTI B. SARIS
                              Chief United States District Judge